# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| **Minotaur Systems LLC,** | § § | |
| Plaintiff, | § § | |
| vs. | § § | NO. 1:24-cv-00789-RMR-SBP |
| **Trimble Inc.,** | § § | **JURY TRIAL DEMANDED** |
| Defendant. | § § | |

## DEFENDANT TRIMBLE'S MOTION TO DISMISS
## PLAINTIFF MINOTAUR'S FIRST AMENDED COMPLAINT
## FOR FAILURE TO STATE A CLAIM

TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL BACKGROUND ................................................................................................. 3

    A. Minotaur And Its Complaint ................................................................................... 3

    B. The '376 Patent's System For Capturing Vehicle Data, Occupant Data, And Biometric Data And Then Synchronizing With Video Data ............................................................ 5

    C. Minotaur's Cited Evidence Regarding Trimble's Video Intelligence Solution ............... 8

III. LEGAL STANDARDS ...................................................................................................... 10

    A. Pleading Requirements For Direct Infringement ................................................... 10

    B. Pleading Standard For Indirect Infringement ........................................................ 11

IV. ARGUMENT ................................................................................................................... 12

    A. Minotaur's Direct Infringement Claims Are Facially Implausible ............................. 12

    B. Minotaur Also Does Not Have Any Plausible Claim For Induced Infringement .......... 13

V. ANY DISMISSAL SHOULD BE WITH PREJUDICE ............................................................. 15

VI. CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**CASES**

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
 620 F. App'x 934 (Fed. Cir. 2015) ...................................................................................11, 15

*Aguirre v. Powerchute Sports, LLC*,
 No. SA-10-cv-0702, 2011 WL 2471299 (W.D. Tex. June 17, 2011)......................................14

*ALD Social, LLC v. Google LLC*,
 No. WA-22-cv-972, 2023 WL 3184631 (W.D. Tex. Mar. 17, 2023).......................................10

*Amgen Inc. v. Coherus Biosciences Inc.*,
 931 F.3d 1154 (Fed. Cir. 2019)...........................................................................................2, 6

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)..........................................................................................................10, 12

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)................................................................................................................10

*Bot M8 LLC v. Sony Corp. of Am.*,
 4 F.4th 1342 (Fed. Cir. 2021) ................................................................................................11

*Bovino v. Levenger Co.*,
 No. 14-cv-122, 2015 WL 1064082 (D. Colo. Mar. 9, 2015) ..................................................14

*Brandywine Comm'ns Techs., LLC v. T-Mobile USA, Inc.*,
 904 F. Supp. 2d 1260 (M.D. Fla. 2012).................................................................................14

*Brereton v. Bountiful City Corp.*,
 434 F.3d 1213 (10th Cir. 2006) .............................................................................................15

*Commil USA, LLC v. Cisco Sys., Inc.*,
 575 U.S. 632 (2015).....................................................................................................2, 11, 14

*DSU Med. Corp. v. JMS Co.*,
 471 F.3d 1293 (Fed. Cir. 2006)..............................................................................................14

*Enplas Display Device Corp. v. Seoul Semiconductor Co.*,
 909 F.3d 398 (Fed. Cir. 2018)..........................................................................................11, 13

*GeoSymm Ventures LLC v. Trimble Inc.*,
 Case No. 1:24-cv-01274-RMR-KAS (D. Colo. 2024) ............................................................4

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
 563 U.S. 754 (2011)................................................................................................................11

*Intell. Ventures I LLC v. Motorola Mobility LLC*,
   870 F.3d 1320 (Fed. Cir. 2017) ...............................................................................................11, 13

*Jenny Yoo Collection, Inc. v. Watters Design Inc.*,
   No. 16-cv-2205, 2017 WL 4997838 (S.D.N.Y. Oct. 20, 2017) ..................................................2

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
   572 U.S. 915 (2014) ....................................................................................................................3

*Navog LLC v. Trimble Inc.*,
   Case No. 1:24-cv-01378-PAB-KAS (D. Colo. 2024) .................................................................4

*Ortiz & Assocs. Consulting, LLC v. Ricoh USA, Inc.*,
   No. 6:21-cv-01178, 2023 WL 2904583 (W.D. Tex. April 11, 2023) .........................................10

*Ottah v. Fiat Chrysler*,
   884 F.3d 1135 (Fed. Cir. 2018) ..............................................................................................1, 10

*Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*,
   No. 4:19-cv-876, 2020 WL 6781566 (E.D. Tex. Nov. 17, 2020) ..............................................11

*Ruby Sands LLC v. Am. Nat'l Bank of Tex.*,
   No. 2:15-cv-1955, 2016 WL 3542430 (E.D. Tex. June 28, 2016) ............................................11

*Superior Indus., LLC v. Thor Glob. Enters. Ltd.*,
   700 F.3d 1287 (Fed. Cir. 2012) ...................................................................................................2

*Xpoint Techs., Inc. v. Microsoft Corp.*,
   730 F. Supp. 2d 349 (D. Del. 2010) ..........................................................................................14

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
   528 F. Supp. 3d 247 (D. Del. 2021) ..........................................................................................14

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 11 ..........................................................................................................4, 13, 15

Fed. R. Civ. Proc. 12(b)(6) ........................................................................................................ passim

I. **INTRODUCTION**

When a patent owner asserts infringement based on a reading of its patent that is such a stretch—*i.e.*, so far afield from what the patent covers—that the allegation is clearly implausible, district courts can and should dismiss that claim under Rule 12(b)(6). *E.g., Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1139, 1141-42 (Fed. Cir. 2018). That is exactly what should happen here.

Plaintiff Minotaur Systems LLC's ("Minotaur's") single asserted patent is directed to systems for monitoring information about vehicles and their occupant(s) (*e.g.*, a driver) and synchronizing that collected information with video footage, with the safety goal being to separately capture multiple types of data relating to "eccentric" operation events: (a) vehicle information (*e.g.*, speed, engine operation, and hard stops); (b) occupant information (*e.g.*, the number of them and their position and size); (c) video; and (d) data collected through biometric sensors (data concerning the statistical analysis of biological observations and phenomena) separate from the video. The Patent Office issued U.S. Patent No. 7,386,376 ("the '376 patent") only because the claims recited an in-vehicle recording system having "a data capture module [that] captures ***biometric data***" and a ***separate*** "video capture module recording ***video*** data." *See* § II.B, *infra* (emphasis added). Minotaur's predecessor argued to the Patent Office that it should be granted a patent because the prior art did not disclose capturing (*e.g.*, collecting and/or recording) ***biometric*** data and instead only disclosed recording ***video*** data and collecting ***vehicle*** data: "[The] Sakoh [prior art reference] only captures vehicle data (acceleration) and video data... Sakoh does not disclose any [occupant and/or biometric] sensors that monitor occupant data apart from the camera" and "Lemelson does not disclose occupant sensors that gather biometric data" and instead "monitors ***vehicle data*** such as erratic driving patterns...." Ex. A (App. Appeal Br.)[1]

---

[1] All exhibits are attached to the Keese Declaration, unless otherwise noted. Notably, it is proper for the Court to consider statements in the asserted patent's specification (Ex. 1 to the FAC) and

at 5, 8-9 (last emphasis in original); *see also* Dkt. No. 1-1 at 1:65-2:3 (distinguishing data based on captured video and vehicle data from capturing occupant data in the first instance).

Because it could not and cannot credibly allege that Trimble's accused Video Intelligence Solution product captures biometric data using sensors that are separate from video captured by Trimble's Dash Cam video recorder, Minotaur largely ignored this central requirement in its original complaint and—disingenuously—pointed only to ***video*** captured by Trimble's Dash Cam recorders as meeting the requirement for ***biometric*** sensors/data.  *See* Dkt. No. 1-2.  This was not a minor or incidental flaw in Minotaur's theory, nor was it one that can be fixed.  It goes to the heart of the asserted patent claims and means that Minotaur's direct infringement claim fails.

Trimble therefore moved to dismiss.  Dkt. 19.  In response, Minotaur insisted that it needed three weeks to oppose Trimble's motion only to—on the day that its response was due—file an amended complaint ("FAC") that resolves none of the deficiencies that Trimble's motion had highlighted.  Dkt. 29; Dkt. 29-2; Ex. F.  This appears to have just been a delay tactic.  Trimble now therefore moves to dismiss a second time, repeating the same arguments it made before.

Minotaur's indirect infringement claims are likewise facially deficient, even as amended. Induced infringement claims require not just conclusory allegations of knowledge and intent to induce infringement, but a sufficient degree of factual detail supporting those conclusions.  *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) (indirect infringement requires "knowledge of the patent in suit and knowledge of patent infringement"); *Superior Indus., LLC v. Thor Glob. Enters. Ltd.*, 700 F.3d 1287, 1295-96 (Fed. Cir. 2012) (affirming dismissal because plaintiff "[did]

---

prosecution history (Exs. A-E) as part of a Rule 12(b)(6) motion.  *See Amgen Inc. v. Coherus Biosciences Inc*., 931 F.3d 1154, 1159-61 (Fed. Cir. 2019) (affirming dismissal for failure to state claim based on patentee's statements during prosecution); *Jenny Yoo Collection, Inc. v. Watters Design Inc.*, No. 16-cv-2205, 2017 WL 4997838, at *9 (S.D.N.Y. Oct. 20, 2017) ("Although examination of the prosecution history is typically handled during the summary judgment stage, whether prosecution history estoppel applies may be determined on a motion to dismiss.").

2

not allege any facts to support a reasonable inference that [defendant] specifically intended to induce infringement ... or that it knew it had induced acts that constitute infringement"). Here, Minotaur provides no explanation of how or why Trimble knew of and could have formed the requisite specific intent to indirectly infringe before the filing of the complaint here. Not only that, but indirect infringement requires an underlying direct infringement by a third party (*Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 923 (2014)), and, as explained above, Minotaur has not plausibly alleged any such direct infringement by anyone. For both of these reasons, Minotaur's indirect infringement claim should also be dismissed.

## II. FACTUAL BACKGROUND

### A.  Minotaur And Its Complaint

Minotaur is a non-practicing entity that filed its certificate of formation in Delaware less than two years ago, shortly before it acquired the about-to-expire '376 patent and other patents. Minotaur has since filed eleven suits asserting infringement of the '376 patent.

Minotaur's FAC asserts theories of direct and indirect infringement for only a single claim (claim 1) of the '376 patent. The FAC, like the original complaint before it, contains only cookie-cutter, generic allegations of infringement, without detail specific to the Trimble's accused product. *Compare* Dkt. 1 *with* Dkt. 29. The only explanation of Minotaur's infringement theory, deficient and cursory as it is, is in the chart attached to the complaint. *See* Dkt. 29 at ¶¶ 11-12 (alleging Trimble infringes by "making, using, offering to sell, selling and/or importing, without limitation, at least the Defendant products identified in the charts incorporated into this Count ... that infringe at least the exemplary claims of the '376 Patent also identified in the charts ...."); Dkt. 29-2.[2] Minotaur's complaint (and FAC) against Trimble is near-identical to two others that

---

[2] Minotaur's counsel, Mr. Rabicoff, has filed hundreds of cases in the last year alone, using boilerplate, recycled complaints and only varying the claim charts attached.

3

Plaintiff's counsel, Mr. Rabicoff, filed against Trimble this year on behalf of other plaintiffs. Both of those complaints have since been withdrawn—one after Trimble filed a Rule 12(b)(6) motion and one at the end of the safe harbor period triggered when Trimble served a Rule 11 motion.[3]

In its chart for this case, Minotaur identifies only a single accused product, the Trimble Video Intelligence Solution, referring to it as the "Accused Product." Dkt. 29-2 at 2. More specifically, Minotaur points to Trimble's use in this product of a "Dash Cam connected to engine control module" to allege infringement. *E.g.*, *id.* at 2, 11-13. But, as to the key limitation of claim 1, namely a "data capture module … captur[ing] biometric data," which is the subject of this motion and the limitation that led the Patent Office to allow the claims in the first place, Minotaur fails to identify any biometric data captured by ***sensors*** separate from video data. This is true even after Minotaur amended its complaint and claim chart in response to Trimble's motion to dismiss. Dkt. 29-2 at 1-10; Dkt. 1-2 at 1.[4] Instead, Minotaur points to facial features that are captured by ***video***, which was known in the prior art and expressly ***not*** the basis on which the patent issued, as detailed below. *Id.* at 29-2 at 1, 10; Dkt. 29-1 at 1:64-2:3. This stands to reason: the accused product does not have a data capture module that captures biometric data; it records video of drivers, just like the prior art that Minotaur's predecessor distinguished to obtain its patent.

Minotaur also asserts induced infringement of the '376 patent, using generic and conclusory language. For instance, Minotaur generically identifies "Defendant's customers" in its FAC as direct infringers (Dkt. 29 at ¶15), but does not identify any specific customer in the United

---

[3] *GeoSymm Ventures LLC v. Trimble Inc.*, Case No. 1:24-cv-01274-RMR-KAS (D. Colo. 2024); *Navog LLC v. Trimble Inc.*, Case No. 1:24-cv-01378-PAB-KAS (D. Colo. 2024).

[4] After Trimble moved to dismiss based on the arguments made above, Minotaur amended its chart to add allegations "on information and belief" that the accused product "captures" biometric data, but Minotaur did nothing to fix the fatal shortcoming that Trimble does not capture that data using ***sensors*** and a separate data capture module for that purpose. Dkt. 29-2 at 1. Instead, Minotaur points to the data captured by video. *Id.* That misses the point.

4

States, much less describe how they allegedly infringe separate and apart from the insufficient allegations of direct infringement in the attached claim chart. *See id.* And, with respect to the key intent requirement for an induced infringement claim, Minotaur's allegation that "Defendant has actively, knowingly, and intentionally continued to induce infringement of the '376 Patent" rests entirely on knowledge of the asserted patent provided through Minotaur's original complaint. *Id.*

**B.  The '376 Patent's System For Capturing Vehicle Data, Occupant Data, And Biometric Data And Then Synchronizing With Video Data**

The '376 patent discloses systems with a "set of sensors [that] incorporates traditional vehicle data sensors, novel occupant status sensors, video information, and *biometric sensors* in order to anticipate an impending eccentric condition, and to maintain a complete record of the vehicle and occupant status prior to an [eccentric condition] event." Dkt. 29-1 ('376 patent) at 2:29-48 (emphasis added). As discussed below, the patent would not have issued but for the inclusion of biometric data collected by a data capture module.

Claim 1, the only claim that Minotaur asserts, is a system claim that expressly requires a data capture module that captures *biometric information* in addition to capturing vehicle data, while a separate video capture module captures video:

> 1. An in-vehicle recording system, comprising:
> 
>     a data capture module capturing vehicle data and occupant data, *wherein the data capture module captures biometric data*;
> 
>     a *video capture module recording video data inside and outside the vehicle*; and
> 
>     a data recorder in the vehicle, the data recorder recording the vehicle data, the occupant data and the video data and continuously synchronizing the occupant data with the vehicle data.

*Id.* at 8:15-24 (emphases added). The claim language thus expressly distinguishes between multiple different types of data, including "vehicle data," "occupant data," and "biometric data," and then "video data," which is captured by a completely separate module.

The patent's specification expressly distinguishes biometric data from information

5

gathered by video and vehicle sensors, making clear that the alleged invention combines continuous recording of data from "traditional vehicle sensors" (like ones that monitor speed, engine diagnostics, brake position, etc.) and "video sensors … used to maintain a visual record of in-vehicle and out-of-vehicle events" with recording of data from "non-traditional data sensors" such as occupant sensors that measure "occupant position/height/weight, cellular phone use" and "[b]iometric sensors (such as a heart beat monitor)…." *See, e.g.*, *id.* at 2:29-48; Fig 1 (describing a "Biometrics" sensor as an input to a data bus, along with many other types of vehicle and occupant sensors, independent and separate from the video module); 4:15-46; 5:10-15; 5:22-27; 5:31-42.  For example, the specification distinguishes biometric sensors from analysis of video data. *Id.* at Fig. 1 (element (2) providing for both "video capture and data capture control units"; element (3) providing for a video module; and element (4) providing for occupant, vehicle, and biometric sensors); 2:29-35 ("The set of sensors employed in this device is unique as it incorporates traditional vehicle data sensors, novel occupant status sensors, ***video*** information, ***and biometric sensors***....") (emphasis added); 4:29-35.  In other words, the invention is unequivocally to capture biometric data from sensors in addition to, and separate from, a video module.

If this was not clear enough from the claim language and specification (and it is), the prosecution history of the patent removes any argument to the contrary.[5]  The premise upon which Minotaur's predecessor convinced the Patent Office to issue the '376 patent was that it requires allegedly novel sensor data relevant to driver safety in addition to traditional video cameras and vehicle data recording equipment.  In short, to secure allowance of its claims, Minotaur's predecessor distinguished its invention from prior art references cited by the Examiner by arguing that the prior art did ***not*** disclose a system to capture biometric data in addition to, and separate

---

[5] As explained above, it is not considered to be outside of the pleadings to consider a patent's prosecution history when resolving a Rule 12(b)(6) motion.  *See Amgen*, 931 F.3d at 1159-61.

from, capturing video and vehicle data. This was the reason that the '376 patent issued.

For instance, Minotaur's predecessor expressly argued to the Patent Office Examiner that then-pending claims 40-41 and 56-57 were patentable over prior art that disclosed video recording in vehicles because the claims required sensors that capture "biometric data," arguing that no "biometric data is recorded" in the prior art. Ex. B (Amendment after Nonfinal Rejection) at 7-8; Ex. C (Response after Final Office Action) at 3-4 ("Lemelson et al. does not use sensors to record biometric data and therefore there is no suggestion to make the combination."). When the Examiner maintained his rejection of the claims, Minotaur's predecessor even *appealed* to the Board of Patent Appeals, arguing that the prior art Sakoh reference (which included video recording and capture of vehicle data) "only captures vehicle data (acceleration) and video data, not occupant data" because "Sakoh does not disclose any sensors that monitor occupant data apart from the camera" (Ex. A (Applicant Appeal Brief) at 5) and that the other prior art, including Kithil, Kirmuss, and Lemelson, did not disclose or render obvious adding biometric sensors, including because Lemelson only monitored vehicle data to determine driver state, rather than capturing biometric data. Ex. A at 8-9. The applicant thus distinguished prior art that: (a) recorded video and/or (b) captured vehicle data, *e.g.*, to monitor driver alertness, arguing that this art did not disclose sensors to capture biometric data.

Specifically, for the claims then numbered 56 and 57 (ultimately renumbered as claims 1 and 2), the applicant argued that capturing video (as in the Sakoh prior art reference) and/or monitoring vehicle data (as in Sakoh and in the additional Lemelson reference) was insufficient to render obvious claims reciting the capture of biometric data. *Id.* at 9. Then, in its reply brief, Minotaur's predecessor further highlighted the distinction between video data, on the one hand, and occupant and biometric data, on the other, noting that "claim distinguishes the claimed 'video data' from the claimed 'occupant data.'" Ex. D (Applicant Reply Brief) at 2 (distinguishing video

7

data used to determine the condition of the driver from occupant data captured outside of video).

Based on these arguments, the Board reversed the rejections of then-pending claims 56 and 57 because Sakoh and Lemelson do not disclose capturing biometric data. Ex. E (Appeal Decision) at 8-9 ("[B]iometric data is data of, relating to, or concerned with the statistical analysis of biological observations and phenomena. Lemelson's detection of erratic driving patterns is not a biological observation.... Driving pattern data that may have nothing to do with a driver's biological state cannot reasonably be considered 'biometric data'."). Specifically, the Board distinguished biometric data from the video data of Sakoh and the driving pattern data of Lemelson.[6]

## C.     Minotaur's Cited Evidence Regarding Trimble's Video Intelligence Solution

Trimble's Video Intelligence Solution is a system combining Trimble's Dash Cam video recorder with vehicle data recorded from the vehicle's Engine Control Module ("ECM"). *See* Dkt. 29-2 at 4-9 (Trimble website screenshots describing the product). Trimble's Video Intelligence Solution analyzes the video data captured by the Dash Cam to identify, for instance, driver cell phone usage and fatigue. *Id.* at 8. In other words, the Trimble Video Intelligence System captures "vehicle data" and "video data," not additional biometric data, as required by claim 1.

Minotaur describes its infringement allegations in a claim chart attached to its complaint. *Id.* at 2. With respect to the critical limitation of claim 1 (a data capture module that captures vehicle data and occupant data, wherein that module captures ***biometric data***), the chart identifies only "facial imagery" (*i.e.*, captured by the Dash Cam) as alleged biometric data, and further fails to identify how this is any different than generic video data taken inside a vehicle. *Id.* at 2, 10.

---

[6]     Notably, the Board of Patent Appeals found that a different reference, Kithil, ***did*** disclose capturing biometric data via a "sensor array to detect head[-]nodding and other head motion which correlates with driver sleepiness," but the Examiner did not rely on Kithil when he rejected claims 56 and 57. Ex. E at 7-8. The Board likely would not have reversed the Examiner if he had done so. In other words, although not at issue through this motion, the claims are invalid and there is nothing inventive in the asserted patent.

8

Indeed, driving this point home, Minotaur points to the exact same Dash Cam for the "video capture module" limitation of claim 1. *Id.* at 11-12; *see also id.* at 5-6.

Minotaur's original and amended claim charts make no effort to grapple with the claim language, specification, or prosecution history, or how the term "biometric" data ***must*** be construed to be biometric data collected by ***separate*** sensors, to substantiate its allegation that Trimble's video is "biometric data." It ignores that requirement entirely, focusing instead on the fact that Trimble allegedly "captures" biometric data (*i.e.*, the data captured on video in Trimble's system), citing to a Trimble privacy notice indicating that some jurisdictions ***may*** consider images of faces to be "biometric data" as a legal matter:

> ***On information and belief***, as indicated by the fact that the vehicle data, occupant data and/or biometric data is displayed on the display of the vehicle alongside the raw video, such data is captured. Consistent with the plain and ordinary meaning of 'biometric data,' ***Defendant's privacy notice*** states that it "capture[s]" "facial imagery data," and that ***"facial imagery data may be considered biometric data."*** Defendant's product offerings which capture "facial imagery data" from "photos and/or videos," including Defendant's "Driver Behavior Events," may also "be considered biometric data" ***as stated in Defendant's privacy notice***. On information and belief, Defendant's Dash Cam connected to Engine control module is a "data capture module."

*Id.* at 1 (emphasis added). But generic legal notices do not resolve whether facial video images are "biometric data" captured by a module separate from the camera, as required by the '376 patent.[7]

---

[7]   Trimble's Video Intelligence System does not have sensors (*e.g.*, occupant sensors or biometric sensors, such as heart monitors), that monitor the vehicle's occupants and their biometric data, and Minotaur cannot allege otherwise. The accused product only captures video data (by the Dash Cam) and vehicle data from the connection to the vehicle's engine control module ("ECM," also known as a vehicle's black box). The documents cited by Minotaur in the FAC's claim chart indisputably establish this. *See, e.g.*, Dkt. No. 29-2 at 3-6, 7-9 (citing https://transportation.trimble.com/products/video-intelligence and https://transportation.trimble.com/products/video-intelligence/dashcam (describing the solution as capturing video with a "Forward Facing Camera" and a "Driver Facing Camera" and that it "processes video data in real time to provide driver's feedback"); *id.* at 6, 9-10 (citing https://transportation.trimble.com/resources/blogs/trimble-s-video-intelligence-solutionearns-2022-fleet-management-solution-of-the-year-award (noting that the Video Intelligence Solution "records data directly from the Engine Control Module 'ECM'")). Minotaur does not and cannot

9

### III.    LEGAL STANDARDS

**A.    Pleading Requirements For Direct Infringement**

A complaint must be dismissed if it "fail[s] to state a claim upon which relief can be granted." *See* Fed. R. Civ. Proc. 12(b)(6). It must include more than "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must allege non-conclusory facts that make liability "plausible," meaning the facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Courts routinely dismiss patent infringement claims with conclusory allegations that do not meet these standards, including because a plaintiff relies on an untenable and implausible claim construction to state its claim. *See, e.g.*, *Ottah*, 884 F.3d at 1140-42 (affirming dismissal of claim for infringement where there was "no claim that can be plausibly construed to cover [the accused products]" and finding that a limitation could not "plausibly be construed to include or be the equivalent of [the accused product], in view of the specification and the prosecution history"); *ALD Social, LLC v. Google LLC*, No. WA-22-cv-972, 2023 WL 3184631, at *3-5 (W.D. Tex. Mar. 17, 2023) (granting motion to dismiss because patentee's construction was implausible).

To survive a Rule 12(b)(6) motion on a direct infringement claim in a patent case, "the plaintiff must plead facts that plausibly, not merely possibly, suggest that the accused product meets ***each limitation*** of the asserted claim(s)." *See, e.g.*, *Ortiz & Assocs. Consulting, LLC v.*

---

point to any biometric sensors that record heart rate, breathing, driver motion, etc.

But the Court need not address these factual issues because Minotaur's infringement theory is—on its face—implausible. Minotaur cannot sidestep or gloss over the central requirement of the claims in its charts by failing to point to anything in Trimble's product that could satisfy the claim elements and then profess that its claim chart is sufficient to meet the standards of Rule 12(b)(6).

10

*Ricoh USA, Inc.*, No. 6:21-cv-01178, 2023 WL 2904583, at *4 (W.D. Tex. April 11, 2023) (emphasis added, citation omitted). The "level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). "[A] plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements." *Id.*; *see also Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*, No. 4:19-cv-876, 2020 WL 6781566, at *3 (E.D. Tex. Nov. 17, 2020) (fair notice "requires the plaintiff to plausibly allege that the accused products meet each and every element of at least one claim of the asserted patent") (internal quotation marks omitted); *see also Ruby Sands LLC v. Am. Nat'l Bank of Tex.*, No. 2:15-cv-1955, 2016 WL 3542430, at *4 (E.D. Tex. June 28, 2016) (more than "labels and conclusions" required; "formulaic recitation of the elements of a cause of action will not do") (internal citation omitted).

**B.   Pleading Standard For Indirect Infringement**

To plead indirect infringement, the complaint must plausibly plead underlying direct infringement by a third party. *See Intell. Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1331 (Fed. Cir. 2017) ("[A] finding of direct infringement is predicate to any finding of indirect infringement"); *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 407 (Fed. Cir. 2018). The complaint must also plead facts supporting an inference defendant had "knowledge of the patent in suit and knowledge of patent infringement." *Commil*, 575 U.S. at 639; *see Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015); *see also Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).

11

## IV. ARGUMENT

### A. Minotaur's Direct Infringement Claims Are Facially Implausible

Minotaur's direct infringement claims against should be dismissed for failure to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Minotaur pleads only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which] do not suffice." *Id.*; *see* Dkt. 29 ¶¶ 11-12.

Minotaur's infringement allegations suffer from a readily apparent, fatal, and unresolvable defect. Its claims require a recording system with a (a) data capture module that "captures biometric data," as well as a separate (b) video capture module that engages in "recording video data inside and outside the vehicle." Dkt. 29-1 at 8:16-20; *see also id.* at 8:21-24. But the Trimble Video Intelligence System does not capture biometric data, just video data via cameras (including by a Dash Cam) and vehicle data via a connection to the vehicle's ECM (Engine Control Module).

This missing limitation goes to the heart of the patented invention. During prosecution, the applicant made clear, as does the claim language itself, that a system infringes only if it records video data using a video capture module ***and*** captures biometric data (and occupant data) via separate sensors that are part of a separate data capture module. Ex. A at 5, 8-9; Ex. B at 6, 7-8; Ex. C at 2-4; Ex. D at 2. The applicant expressly defined the alleged invention and distinguished it from prior art that disclosed capturing video and/or vehicle data and then analyzed that data to indicate information regarding the status of the driver, such as lack of attention or fatigue. *See id.* This was the ***only*** basis that the Board of Appeals found to distinguish the claims over the prior art combination of Sakoh and Lemelson. Ex. E at 3, 7-9.[8] Minotaur's predecessor distinguished precisely what Minotaur now attempts to accuse—a system that extracts data regarding driver

---

[8] Trimble disagrees that this alleged distinction is novel or non-obvious, including for the reasons in n.6, *supra*. The Court need not address that issue for this motion, however.

12

state, *e.g.*, sleepiness or erratic driving, based on video or vehicle data rather than biometric sensors. Minotaur is limited by these statements made during prosecution.

Minotaur cannot simply gloss over this fundamental requirement of its patent, providing an infringement theory that does not explain how Trimble's accused product has any sensor or separate module that captures biometric data. Dkt. 29-2 at, *e.g.*, 1-10 (citing only a legal notice regarding facial imagery). This approach rests on an improper claim construction that would entirely eliminate the central requirement of claim 1. This is not plausible.[9]

**B.    Minotaur Also Does Not Have Any Plausible Claim For Induced Infringement**

Minotaur's indirect infringement claims are also deficient and should be dismissed. Initially, the failure to plausibly allege direct infringement by any third party precludes induced infringement. It is axiomatic that "[i]n order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement...." *Enplas*, 909 F.3d at 407 (citations omitted); *see also Intell. Ventures*, 870 F.3d at 1322 ("A finding of direct infringement is a predicate to any finding of indirect infringement...."). Although Minotaur has belatedly and generically alleged that Trimble's "customers" directly infringe, it continues to rely entirely on the single claim chart attached to its FAC as the basis for that allegation. Dkt. 29 at ¶15. For the same reasons explained above that this chart is insufficient to plausibly allege direct infringement against Trimble, it is also insufficient to plausibly allege infringement by Trimble's customers.

Beyond that core failing, Minotaur also failed to plead that Trimble had any knowledge of the patent or infringement before the filing of this action, or a specific intent to induce infringement ***before*** this action. Minotaur's complaint does not plead, for instance, that Trimble had pre-suit knowledge of the '376 patent, pleading facts only for post-suit knowledge: "[S]ervice of the

---

[9]    Nor can Minotaur state a plausible theory consistent with Rule 11. *See* n.7, *supra*.

Original Complaint on March 20, 2024 … in conjunction with the attached claim charts [sic, plural, but only one claim chart attached] ... constitutes actual knowledge of infringement as alleged here." Dkt. 29 ¶13; *see also id.* at ¶15. There is no allegation, not even an unsupported and conclusory one, of pre-suit knowledge.[10] Minotaur's inducement allegations should be dismissed, particularly as to any alleged pre-suit inducement.

Moreover, and dispositively here, Minotaur's threadbare and conclusory allegations related to specific ***intent*** to induce infringement also are insufficient. Allegations of specific intent require factual "evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006). But Minotaur's allegations of specific intent amount to conclusory statements that Trimble "actively, knowingly, and intentionally continued to induce infringement" of the '376 patent. Dkt. 29 ¶15. There is no split of authority on this point; these allegations are insufficient. They fail to present facts tending to establish that: (1) Trimble knew that accused acts infringed; and (2) Trimble knew that the promotion of their products would

---

[10]   Courts split on whether filing a complaint can establish knowledge for induced infringement, but many hold that complaints alleging induced infringement based only on post-suit knowledge cannot stand. *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 250, 251 (D. Del. 2021) (collecting cases and holding that pre-suit knowledge is required; "The purpose of a complaint is to obtain relief from an existing claim and not to create a claim."); *see also Aguirre v. Powerchute Sports, LLC*, No. SA-10-cv-0702, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) (reliance "on knowledge of [plaintiff's] patent after the lawsuit was filed ... is insufficient to plead the requisite knowledge for indirect infringement"); *Brandywine Comm'ns Techs., LLC v. T-Mobile USA, Inc.*, 904 F. Supp. 2d 1260, 1268-69 (M.D. Fla. 2012); *Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 357 (D. Del. 2010). Older cases in this District go the opposite way and find that post-suit knowledge suffices to allege ***post-suit*** induced infringement (*see, e.g.*, *Bovino v. Levenger Co.*, No. 14-cv-122, 2015 WL 1064082, at *4 (D. Colo. Mar. 9, 2015)), but those cases were decided before seminal Supreme Court cases relating to indirect infringement, like *Commil*, 575 U.S. at 639 (decided March 2015; inducement requires both knowledge of patent and knowledge that induced acts constituted infringement,). Trimble respectfully submits that the cases finding pre-suit knowledge is required for inducement are on more solid footing and should be followed here. *See, e.g., ZapFraud*, 528 F. Supp. 3d at 251.

induce or encourage others to infringe the asserted patent. *Addiction & Detoxification Inst.*, 620 F. App'x at 938 ("[S]imply recit[ing] the legal conclusion that Defendants acted with specific intent" does not amount to reciting sufficient facts that "would allow a court to reasonably infer that Defendants had the specific intent to induce infringement"). Minotaur's generalized and conclusory allegations fail to identify any action that amount to encouraging another's infringement with specific intent to do so.

For these reasons, Minotaur's allegations of indirect infringement should also fall.

## V. ANY DISMISSAL SHOULD BE WITH PREJUDICE

There is a reason that Minotaur's infringement allegations (both as framed originally and as amended) glossed over the key requirement of the asserted patent, the same requirement that it relied on to get the claims past the Patent Office: it cannot allege infringement in a manner that is consistent with Rule 11 if it accepts any plausible meaning of its patent claims and properly attempts to apply them to Trimble's products. *See* n.7, *supra*. It therefore runs afoul of Rule 11 in a different way: it has decided to simply ignore the relevant claim language—first, in its original complaint and, now, in its FAC.[11] Because any further amendment would be futile, any dismissal should be with prejudice and without leave to amend. *See, e.g.*, *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

## VI. CONCLUSION

Even accepting as true the allegations of Minotaur's FAC, Minotaur fails to state a claim of either direct or indirect infringement upon which relief might plausibly be granted. Accordingly, Trimble requests that this Court dismiss Minotaur's FAC with prejudice.

---

[11] Assuming that this motion is granted, Trimble intends to file a Rule 11 motion at that time.

Dated: October 2, 2024                        Respectfully submitted,

/s/ *Daniel Keese*
Amanda Tessar
Colorado Bar No. 33173
PERKINS COIE LLP
1900 16th Street, Suite 1400
Denver, CO 80202
(303) 291-2300
ATessar@perkinscoie.com

Daniel Keese
Oregon Bar No. 140989
PERKINS COIE LLP
1120 NW Couch Street, 10th Floor
Portland, OR 97209
(503) 727-2000
DKeese@perksincoie.com

16