IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| MINOTAUR SYSTEMS LLC,<br><br>                Plaintiff,<br><br>v.<br><br>TRIMBLE, INC.,<br><br>                Defendant. | NO. 1:24-cv-00789-RMR-SBP |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Plaintiff Minotaur Systems LLC ("Minotaur") hereby opposes Defendant Trimble Inc.'s ("Trimble") Motion to Dismiss (the "Motion"). Trimble's Motion should be denied because Minotaur has adequately pled claims for both direct and indirect infringement of U.S. Patent No. 7,386,376 ("the '376 Patent "), and because Trimble's prematurely raises issues claim construction and factual issues inappropriate for resolution at the pleading stage.

**I.    INTRODUCTION**

Trimble's challenge to Minotaur's claims for direct infringement rests largely on an improper attempt to resolve claim construction disputes at the pleading stage. Most notably, Trimble's central argument—that "biometric data" must be construed to exclude "video data"—is contradicted by Trimble's own Privacy Notice, which explicitly acknowledges that "[f]acial imagery data may be considered biometric data in some jurisdictions." Dkt. 29-2 at 2, 9-10. In an attempt to overcome its own admission, Trimble argues that the claims, specification, and prosecution history of the '376 Patent somehow compel a construction of "biometric data" that would exclude "video data."

1

This argument fails for multiple reasons. First, claim construction disputes of the kind Trimble raises here generally cannot be resolved on a motion to dismiss. Second, Trimble's prosecution history arguments raise numerous factual issues, including the applicant's rationale for specific prosecution arguments and the actual disclosures of the prior art references (which are not even in evidence), that preclude resolution at this stage.

Even if considered on the merits, Trimble's claim construction arguments fail. Nothing in the intrinsic record requires that "biometric data" be distinct from "video data." The use of different claim terms does not mandate they be mutually exclusive absent some logical necessity, and Trimble identifies none. As for Trimble's prosecution history arguments, its selective quotations from the prosecution history are unavailing, and frequently do not even involve the term ("biometric data") that is the focus of its argument.

Finally, Minotaur has properly pled indirect infringement. Courts routinely find similar (and even less detailed) allegations sufficient at the pleading stage. While Trimble argues pre-suit knowledge is required, the majority of recent cases hold that knowledge from the initial complaint suffices for post-suit indirect infringement claims. Further, Minotaur's allegations of specific intent satisfy Rule 9(b)'s standard for pleading state of mind. At minimum, any dismissal should be without prejudice to allow amendment after discovery reveals additional evidence of Trimble's knowledge and intent.

For all these reasons, and as detailed below, Trimble's premature attempt to resolve claim construction disputes should be rejected, and its Motion should be denied.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Importantly, claim

construction disputes are generally inappropriate for resolution on a motion to dismiss. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349 (Fed. Cir. 2018).

III. **ARGUMENT**

**A. Claim Construction Disputes Are Not Properly Resolved on a Motion to Dismiss**

Trimble's attempt to resolve the parties' dispute based on its construction of "biometric data" as necessarily distinct from "video data" is improper at the pleading stage. While Trimble cites *Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154, 1160 (Fed. Cir. 2019) in a footnote for the proposition that considering "prosecution history estoppel" is proper at the pleading stage, that case is inapposite. Dkt. No. 30 at 1-2, n. 1. Unlike this case, *Amgen* did not involve a claim construction dispute. Rather, in *Amgen*, the patentee had "clearly and unmistakably surrendered unclaimed salt combinations during prosecution." *Id.*; *see also Amgen Inc. v. Coherus Biosciences Inc.*, No. CV 17-546-LPS-CJB, 2018 WL 1517689, at *4 n.5 (D. Del. Mar. 26, 2018) (distinguishing issue in *Amgen* from claim construction dispute in *Nalco*). There, the issue was whether the patentee had surrendered salt combinations other than the "particular" combinations claimed—not whether one claim term must be construed distinctly from another.

Here, by contrast, the parties contest the scope and construction of "biometric data." As such, "[d]isposition of [a] case based on the construction or prosecution history of [claim] terms is premature" at the pleading stage. *Repairify, Inc. v. Keystone Auto. Indus., Inc.*, 610 F. Supp. 3d 897, 902 (W.D. Tex. 2022). The Federal Circuit has repeatedly held that "[r]esolution of [such a] dispute, even if part of the record that can be considered, is particularly inappropriate in the Rule 12(b)(6) context." *Nalco*, 883 F.3d at 1349 (holding that determination of whether patentee's statements during post-issuance prosecution of a reexamination proceeding were "admissions" was inappropriate at the Rule 12 stage); *see also Mallinckrodt IP Unlimited Co. v. B. Braun Med. Inc.*, No. CV 17-365-LPS, 2018 WL 2254540, at *1 (D. Del. May 17, 2018).

3

### B. Trimble's Prosecution History Arguments Are Premature and Depend on Disputed Factual Issues

Resolution of this dispute is particularly inappropriate because Trimble's prosecution history estoppel argument depends on factual issues that cannot be resolved at the pleading stage. Trimble cites *Jenny Yoo Collection, Inc. v. Watters Design Inc.*, No. 16-cv-2205, 2017 WL 4997838, at *9 (S.D.N.Y. Oct. 20, 2017) for the proposition that prosecution history estoppel may be resolved at the pleading stage, although Trimble does not really articulate whether it is asserting a theory of prosecution history estoppel or disclaimer. Nevertheless, disputed factual issues preclude resolution of Trimble's prosecution history arguments here.

The Federal Circuit has held that "[t]he presumption of surrender from a patentee's decision to narrow his claim may be rebutted if the patentee can demonstrate that: (1) the alleged equivalent would have been unforeseeable at the time ... the narrowing amendment was made; (2) the rationale underlying the narrowing amendment bore no more than a tangential relation to the equivalent at issue; or (3) there was some other reason suggesting that the patentee could not reasonably have been expected to have described the alleged equivalent." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1324 (Fed. Cir. 2009). Thus, as the Federal Circuit has recognized, "the scope of estoppel depends on factual questions regarding the prosecution history, which may preclude a disposition of the issue not only on a motion to dismiss, but on summary judgment." *Hormone Research Found., Inc. v. Genentech, Inc.*, 904 F.2d 1558, 1564 (Fed. Cir. 1990).

Here, as more fully explained *infra*, many of the statements cited by Trimble from the prosecution history do not even involve the limitation Trimble has put at issue ("biometric data"), and generally bear no more than a tangential relation to it (if any). Moreover, Trimble's arguments would require the Court to determine, as a factual matter, whether the purported "narrowing" arguments by the applicant or "surrender" of subject matter were made to overcome disclosures in the prior art (e.g., the Sakoh and Lemelson references) as Trimble characterizes

them, or another, unrelated aspect of the prior art. But this the Court cannot do, as the prior art references themselves are not in evidence. Thus, under *DePuy Spine*, there are several factual issues that preclude resolution of Trimble's prosecution history arguments, including whether the statements Trimble cites were even directed at claim terms or disclosures that are apposite to Trimble's non-infringement position, let alone whether such statements constituted "surrender" of subject relevant matter. *DePuy Spine*, 567 F.3d at 1324. These require a careful examination of the prior art history as a whole, together with the prior art references themselves, which cannot be conducted at the pleading stage.

### C. The Claims Do Not Require "Biometric Data" to Be Distinct from "Video Data"

Even if the Court were to consider Trimble's claim construction arguments, they are unavailing. Trimble argues that "biometric data" must somehow be distinct from "video data" because those claim terms are different. But as courts have repeatedly held, the use of different claim terms requires that they be separate only if otherwise the result would be nonsensical. *See, e.g., Bot M8 LLC v. Sony Interactive Ent. LLC*, No. 2022-1569, 2023 WL 5606978, at *4 (Fed. Cir. Aug. 30, 2023); *Skedco, Inc. v. Strategic Operations, Inc.*, 685 F. App'x 956, 960 (Fed. Cir. 2017); *Little Giant Ladder Sys., LLC v. Tricam Indus., Inc.*, No. 20-CV-2497 (KMM/ECW), 2022 WL 2287048, at *18 (D. Minn. June 24, 2022); *Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*, 397 F. Supp. 3d 560, 570 (D. Del. 2019).

Here, there is no reason why "biometric data" cannot include "video data," notwithstanding the use of different words in the claim, and Trimble offers no reason to conclude otherwise.

### D. The Specification Does Not Require That "Biometric Data" Be Distinct From "Video Data"

Trimble's various references to the preferred embodiment in the specification, far from supporting its construction of "biometric data," merely attempt to improperly import limitations into the claim. *See Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1362 (Fed. Cir. 2007) ("In

5

examining the specification for proper context, however, this court will not at any time import limitations from the specification into the claims.").

Trimble tries to suggest that the specification treats "vehicle data," "occupant data," and "biometric data," and "video data" as separate and distinct. Dkt. No. 30 at 5. But, as one indication that Trimble's reading of the specification is overly rigid and superficial, the specification actually confirms that at least some "occupant data" may be obtained from a camera, stating that "[v]isual information from the camera (3a) can be used to infer the number of occupants, occupant ID, and occupant position." '376 Patent, 4:62-64.

### E. The Prosecution History Does Not Support Trimble's Narrow Construction

Trimble's arguments from the prosecution history are similarly unavailing and frequently misleading. For example, Trimble cites a passage from an appeal brief filed during prosecution, in which the applicant argued that the Sakoh reference did not disclose "sensors that monitor occupant data apart from the camera." Dkt. No. 30, Ex. A at 5. But this was not an argument narrowing the scope of "biometric data," nor does it prove that "biometric data" must be construed to be something other than "video data." Although Trimble in one breath asserts that the specification distinguishes between various distinct forms of data (Dkt. No. 30 at 5), in this instance Trimble seems to equate "occupant data" with "biometric data," so that it can rely on the applicant's statements about "occupant data" during prosecution. Even if Trimble were correct to equate these claim terms, the specification makes clear that at least some "occupant data" may be obtained from a camera. '376 Patent, 4:62-64.

The applicant's comments about the Lemelson reference likewise do not support Trimble's argument. The applicant was not distinguishing Lemelson on the basis that "biometric data" could not be "video data," but rather because Lemelson only monitored "vehicle data." Dkt. No. 30, Ex. A at 8-9. The same is true of the applicant's comments in Exhibits B-C. And while Trimble seizes on the applicant's remark that the "claim distinguishes between the claimed

'video data' from the claimed 'occupant data'" (Dkt. No. 30, Ex. D at 2), this is not relevant to whether "biometric data" must somehow be construed to be distinct from "video data."

As noted *supra*, Minotaur disputes whether the applicant's statements are relevant to the construction of "biometric data," let alone whether they compel the narrowing construction that Trimble advocates. Without examining these statements in the context of the actual prior art references at issue during prosecution (which are not in evidence), and in the context of the prosecution history as a whole, these factual disputes cannot be resolved. *See DePuy Spine*, 567 F.3d at 1324; *Hormone Research Found*., 904 F.2d at 1564. Accordingly, Trimble's prosecution history arguments, while meritless in any event, are simply premature at this stage.

### F. The Board's Construction Supports Minotaur's Position

Finally, the Board's definition of "[b]iometric data" as "data of, relating to, or concerned with the statistical analysis of biological observations and phenomena" actually supports Minotaur's position. Dkt. No. 30, Ex. E at 8-9. While the Board found that "Lemelson's detection of erratic driving patterns is not a biological observation," the Board's definition is broad enough to encompass Trimble's alleged "facial imagery data," which plainly relates to "biological observations and phenomena." Indeed, Trimble "processes" this "facial imagery data" using "advanced AI algorithms" to perform such analysis. Dkt. No. 29-2, at 9-10. Thus, the alleged "facial imagery data" plausibly meets the "biometric data" limitation even under the Board's definition. Regardless, the Board's construction of "biometric data" during prosecution is not binding on the Court.

For all these reasons, Minotaur plausibly alleged a claim for direct infringement, and Trimble's Motion should be denied.

### G. Minotaur Has Plausibly Pleaded a Claim for Indirect Infringement

Trimble also takes issue with Minotaur's indirect infringement allegations. Dkt. No. 30 at 13-15. As an initial matter, it is important to recognize that similar allegations—and, in fact, allegations *less* detailed than Minotaur's—have been found sufficient to state a claim for

inducement. For example, in *Redd Grp., LLC v. Glass Guru Franchise Sys., Inc.*, No. 12-CV-04070-JST, 2013 WL 3462078, at *4 (N.D. Cal. July 8, 2013), the complaint simply alleged that "that Defendants have sold 'Scratchpro,' an infringing product, and that they have actively and knowingly aided others, including purchasers of 'Scratchpro,' to infringe the ′336 Patent." *Id.* The court in *Redd* held that these allegations satisfied the pleading requirements for alleging inducement. *Id.* Likewise, in *Network Signatures, Inc. v. Nestle USA, Inc.*, No. SACV111614JVSRNBX, 2012 WL 13023998, at *3 (C.D. Cal. Apr. 16, 2012), the court found similar allegations sufficient to state a claim for inducement, noting that the fact that the patentee did not "specify in greater detail the exact manner in which [the inducer] is alleged to 'enable' the infringing activities is not dispositive at the pleading stage" and that such detail "need not be pleaded in the Complaint." *Id.*

Minotaur's allegations are consistent with, and exceed, the allegations found sufficient to state claims for inducement in *Redd* and *Network Signatures*. For example, Minotaur alleges that "Defendant knew and intended that promoting the Exemplary Defendant Products would induce or encourage its customers to infringe one or more claims of the '376 Patent. For example, as indicated in Exhibit 2, Defendant touted the Exemplary Defendant Products as 'elevat[ing] your fleet's safety' and promoted their use to Defendant's customers." Dkt. No. 29 at ¶ 15.

Trimble argues that Minotaur's allegation of knowledge beginning with the filing of the Complaint is not sufficient without an allegation of "pre-suit knowledge." Dkt. No. 30 at 13-14. But even Trimble acknowledges that courts are split on this issue. *Id.* "[M]ost of the more recent decisions, hold[] that the initial complaint may serve to provide the required knowledge for a claim of post-suit indirect infringement." *DSM IP Assets, B.V. v. Honeywell Int'l, Inc.*, 700 F. Supp. 3d 189, 199 (D. Del. 2023). The Court should follow the "majority" line of cases and hold that knowledge commencing with the initial complaint is sufficient for a claim of post-suit indirect infringement. *Id.*

Trimble next argues that Minotaur has failed to allege specific intent. However, Fed. R. Civ. P. 9(b) provides that "intent, knowledge, and other conditions of a person's mind may be alleged generally." Thus, courts have upheld allegations of inducement where the patentee alleged knowledge or intent "generally, just as the rule [i.e., Fed. R. Civ. P. 9(b)] states—that is, simply by saying that [it] existed." *JKL IP Company LLC v. Creative Forces Group, Inc.*, 2018 WL 5903901, at *3 (C.D. Cal. Mar. 29, 2018) (denying motion to dismiss claim for inducement). Similarly, the court in *Venkee Communications* upheld a claim of inducement where the patentee alleged that "Belkin intended for its customers to carry out the acts that constituted infringement by providing instructions to its customers explaining how to use the Accused Instrumentalities and that, when the customers operated the product as instructed by Belkin, they directly infringed" the asserted patent. *Venkee Communications, LLC v. Belkin International, Inc.*, 2020 WL 5413039, at *2 (C.D. Cal., Aug. 5, 2020); *see also Symantec Corp. v. Veeam Software Corp.*, No. C 12-00700 SI, 2012 WL 1965832, at *5 (N.D. Cal. May 31, 2012) ("Specific intent can reasonably be inferred in this case from the allegations regarding defendant's marketing materials and offers to sell the infringing products.").

Here, Minotaur has alleged that "at least since being served by this Complaint and corresponding claim charts, Defendant knew and intended that the operation of vehicles using the Exemplary Defendant Products charted in Exhibit 2 would infringe one or more claims of the '376 Patent." Dkt. No. 29 at ¶ 15. These allegations are consistent with those found sufficient in *JKL* and *Venkee*.

To the extent that Minotaur's indirect infringement allegations are found insufficient, courts have recognized that "it may have been impossible for [the patentee] to allege any pre-suit knowledge without the benefit of fact discovery" and have therefore frequently "permitted [the patentee] to amend its Complaint after the start of fact discovery to include pre-suit indirect and willful infringement claims, if it is able to elicit sufficient facts to support such allegations." *USC IP P'ship, L.P. v. Facebook, Inc.*, No. 6:20-CV-00555-ADA, 2021 WL 3134260, at *2

9

(W.D. Tex. July 23, 2021); *see also Parus Holdings Inc. v. Apple Inc.*, No. 6:19-cv-00432-ADA, Dkt. 101 (W.D. Tex. Jan. 31, 2020).

Accordingly, while Minotaur maintains that its indirect infringement claims are sufficient, if the Court determines otherwise, any dismissal should be without prejudice to future amendment.

## IV. CONCLUSION

Accordingly, Plaintiff requests that Defendant's Motion be **DENIED** in its entirety. Alternatively, if the Court is inclined to grant Defendant's Motion in any respect, Plaintiff would ask that any such dismissal be *without* prejudice and with leave to amend.

Dated: October 23, 2024

Respectfully submitted,

/s/ Isaac Rabicoff
Isaac Rabicoff
Rabicoff Law LLC
4311 N Ravenswood Ave Suite 315
Chicago, IL 60613
7736694590
isaac@rabilaw.com

**Counsel for Plaintiff**
**Minotaur Systems LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system for the District of Colorado and that ECF system will send a Notice of Electronic Filing to the CM/ECF participants in this case on the 23rd day of October, 2024.

/s/ Isaac Rabicoff
Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
4311 N Ravenswood Ave Suite 315
Chicago, IL 60613
773.669.4590
isaac@rabilaw.com


**Counsel for Plaintiff**
**Minotaur Systems LLC**