IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| Minotaur Systems LLC, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | NO. 1:24-cv-00789-RMR-SBP |
| Trimble Inc., | § § | JURY TRIAL DEMANDED |
| Defendant. | § § | |

# DEFENDANT TRIMBLE'S REPLY IN SUPPORT OF ITS
# MOTION TO DISMISS PLAINTIFF MINOTAUR'S FIRST AMENDED COMPLAINT
# FOR FAILURE TO STATE A CLAIM

TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 1

II. MINOTAUR IGNORES THE EXCEPTION THAT PERMITS THIS COURT TO DISMISS ...................... 2

III. THE CONSTRUCTION OF "BIOMETRIC DATA" HERE CANNOT BE LEGITIMATELY DISPUTED, SO MINOTAUR'S DIRECT INFRINGEMENT CLAIM MUST BE DISMISSED ......................................... 3

    A. The Intrinsic Record Is Clear That "Biometric Data" Is Separate From "Video Data"... 3

    B. The Applicant Disclaimed Any Interpretation That "Biometric Data" Could Be The Same As "Video Data" For Claim 1 ............................................................................ 6

    C. Trimble's 2024 Privacy Policy Has No Bearing On The '376 Patent Claims' Meaning. 7

IV. MINOTAUR'S INDIRECT INFRINGEMENT CLAIMS SHOULD ALSO BE DISMISSED ........................ 8

V. CONCLUSION: ANY DISMISSAL SHOULD BE WITH PREJUDICE ............................................. 10

# Table Of Authorities

**Cases**

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
  620 F. App'x 934 (Fed. Cir. 2015) ...................................................................................9

*ALD Social, LLC v. Google LLC*,
  No. 22-cv-972, 2023 WL 3184631 (W.D. Tex. Mar. 17, 2023)..................................2

*AlexSam, Inc. v. Aetna, Inc.*,
  119 F.4th 27 (Fed. Cir. 2024) ....................................................................................10

*Amgen Inc. v. Coherus Biosciences Inc.*,
  931 F.3d 1154 (Fed. Cir. 2019)....................................................................................3

*Brereton v. Bountiful City Corp.*,
  434 F.3d 1213 (10th Cir. 2006) .................................................................................10

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*,
  224 F.3d 1308 (Fed. Cir. 2000)....................................................................................5

*Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*,
  677 F.3d 1361 (Fed. Cir. 2012)....................................................................................5

*Commil USA, LLC v. Cisco Sys., Inc.*,
  575 U.S. 632 (2015) .....................................................................................................9

*DSU Med. Corp. v. JMS Co.*,
  471 F.3d 1293 (Fed. Cir. 2006)....................................................................................9

*Enplas Display Device Corp. v. Seoul Semiconductor Co. Ltd.*,
  909 F.3d 398 (Fed. Cir. 2018)......................................................................................8

*Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc.*,
  655 F.3d 1291 (Fed. Cir. 2011)....................................................................................9

*Intell. Ventures I LLC v. Motorola Mobility LLC*,
  870 F.3d 1320 (Fed. Cir. 2017)....................................................................................8

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
  869 F.3d 1372 (Fed. Cir. 2017)..................................................................................10

*Markman v. Westview Instr., Inc.*,
  517 U.S. 370 (1996) .....................................................................................................3

*Ottah v. Fiat Chrysler*,
  884 F.3d 1135 (Fed. Cir. 2018)....................................................................................2

*Phillips v. AWH Corp.*,
    415 F. 3d 1303 (Fed. Cir. 2005)..................................................................................3, 7, 8

*Research Corp. Techs. v. Microsoft Corp.*,
    536 F.3d 1247 (Fed. Cir. 2008)..................................................................................2

*UTTO Inc. v. Metrotech Corp.*,
    No. 2023-1435, 2024 WL 4522564 (Fed. Cir. Oct. 18, 2024).............................................2, 3

**STATUTES**

35 U.S.C. § 154 (a) ...............................................................................................................9

35 U.S.C. § 154 (b) ...............................................................................................................9

35 U.S.C. § 286......................................................................................................................9

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 12(b)(6) ............................................................................................... passim

Local Patent Rule 4(b)(3)....................................................................................................4

## I. INTRODUCTION

Minotaur's opposition is entirely based on the general rule that courts avoid construing patent claims when resolving Rule 12(b)(6) motions because claim construction often requires a developed record. That is, admittedly, the general rule. But Minotaur ignores the ***exception*** to that rule, which permits courts to dismiss infringement claims based on a claim construction that is so bad and so clearly wrong that the assertion of patent infringement is "implausible." Trimble explained this point ***in the very first paragraph*** of its motion—and then cited cases in support of it. Mot. at 1, 10. Minotaur ignored those cases and relies on a Federal Circuit decision (*Nalco*) to suggest that dismissal is inappropriate here. *Nalco*, however, has been unequivocally limited to its facts by the Federal Circuit, which has since explained that it is "***routine and proper***" to dismiss infringement claims that intrinsic patent evidence shows cannot support a plaintiff's construction, as discussed further below. This rule exists for good reason: Parties like Trimble should not be put to the expense of defending claims that do not pass the plausibility test—i.e., the types of claims that are often brought by companies (like Minotaur) whose business model is to use the threat of defense costs (rather than the merit of asserted claims) to extract low-value settlements.

To convince this Court that there is a supposedly complex and fact-intensive claim construction issue that the Court should wait to resolve, Minotaur throws up a great deal of noise. But the Court can readily cut through that noise by reviewing the patent, which is unambiguous. The intrinsic record here (i.e., the patent claims, specification, and prosecution history), as well as common sense, show that "biometric data" is and must be separate from conventional video and vehicle data. For its part, Minotaur makes misplaced criticisms of Trimble's arguments but cannot identify support in the intrinsic record for its implausible positions. This is likely why Minotaur leans so heavily into Trimble's current-day privacy policy. But that policy is irrelevant to the '376 patent's scope and why it issued. Minotaur's claim of direct infringement therefore must fall.

As to inducement, Minotaur still cannot identify any direct infringement upon which to base

a claim of inducement, cites only outdated, unreported, and out-of-district cases to support the sufficiency of its allegations, *and* ignores that the single asserted patent here expired since Trimble filed its motion. In short, Minotaur has no viable claim of inducement either.

## II. MINOTAUR IGNORES THE EXCEPTION THAT PERMITS THIS COURT TO DISMISS

As discussed in Trimble's Motion (at 1, 10), courts routinely dismiss patent infringement claims with conclusory allegations that do not pass muster under Rule 12(b)(6), including where a plaintiff's allegations are premised on facially untenable and implausible claim constructions. *E.g.*, *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1140-42 (Fed. Cir. 2018) (affirming dismissal of claim for infringement where there was "no claim that can be plausibly construed to cover" the accused products and finding that a limitation could not "plausibly be construed to include or be the equivalent of [the accused product], in view of the specification and the prosecution history"); *ALD Social, LLC v. Google LLC*, No. 22-cv-972, 2023 WL 3184631, at *3-5 (W.D. Tex. Mar. 17, 2023) (granting motion to dismiss because patentee's construction was implausible).

Minotaur ignores Trimble's cited cases. Instead, Minotaur relies on *Nalco v. Chem-Mod* to suggest that the Court should not or cannot resolve dismiss Minotaur's claim here because doing so now would be premature. Opp. at 2-3. But Minotaur neglects to mention that the Federal Circuit[1] recently addressed and explicitly clarified that decision, limiting it to its facts:

> Those passages [from *Nalco*], we conclude, should not be read as stating a categorical rule against a district court's adoption of a claim construction in adjudicating a motion to dismiss.… Nalco should be read in [a] case-specific way…. Where claims are construed based on intrinsic evidence alone, a decision on claim construction is not different in kind from the interpretation of other legal standards, ***which is proper and routine in ruling on a motion under Rule 12(b)(6)***.

*UTTO Inc. v. Metrotech Corp.*, No. 2023-1435, 2024 WL 4522564, at *5 (Fed. Cir. Oct. 18, 2024) (emphasis added). The Federal Circuit further explained that adopting a categorical rule barring

---

[1] Federal Circuit law governs issues unique to patent law. *E.g.*, *Research Corp. Techs. v. Microsoft Corp.*, 536 F.3d 1247, 1255 (Fed. Cir. 2008) (Federal Circuit "applies its own law" for "issues of substantive patent law and certain procedural issues pertaining to patent law").

determination of claim meaning at the Rule 12(b)(6) stage would "would also be inconsistent with [the Federal Circuit's] precedents" *and* that courts may determine claim scope without separate claim construction proceedings where claim meaning is clear. *Id.*, at \*\*6-7 ("[S]ometimes a claim's meaning may be so clear on the only point that is ultimately material to deciding the dismissal motion that no additional process is needed.").

Thus, any suggestion by Minotaur that this Court cannot or should not resolve Trimble's motion to dismiss as premature should be summarily rejected.

### III. THE CONSTRUCTION OF "BIOMETRIC DATA" HERE CANNOT BE LEGITIMATELY DISPUTED, SO MINOTAUR'S DIRECT INFRINGEMENT CLAIM MUST BE DISMISSED

Minotaur applies a facially unreasonable construction for the term "biometric data." The Supreme Court long ago dictated that questions of patent claim construction are questions of law. *Markman v. Westview Instr., Inc.*, 517 U.S. 370 (1996). Courts construe patent claim terms foremost and often solely based on the intrinsic evidence—meaning the claim language, the patent specification, and the patent's prosecution history. *E.g.*, *Phillips v. AWH Corp.*, 415 F. 3d 1303, 1314-1318 (Fed. Cir. 2005). Courts give extrinsic evidence (i.e., evidence from outside a patent and its prosecution history) significantly less weight and generally consider it to be less reliable. *E.g.*, *id.* at 1318, 1324. Extrinsic evidence cannot be used to contradict a meaning that is unambiguous in light of the intrinsic evidence. *Id.* at 1324. In many instances, particularly where a claim construction dispute is resolved at the pleadings stage, the intrinsic record is clear and there is no need to consult extrinsic evidence at all. *E.g.*, *UTTO*, 2024 WL 4522564, at \*5; *Amgen Inc. v. Coherus Biosciences Inc.*, 931 F.3d 1154, 1159-61 (Fed. Cir. 2019) (affirming dismissal for failure to state claim based on statements during prosecution).

**A.     The Intrinsic Record Is Clear That "Biometric Data" Is Separate From "Video Data"**

A plain reading of the asserted claims (i.e., claim 1 of the '376 patent and the claims that depend from it) shows that "biometric data" and "video data" must be distinct and are captured by different modules in the claimed "in-vehicle recording system." Dkt. No 29-1 at 8:15-20. In other

3

words, only a system that has a "video capture module recording video data…" and a separate "data capture module… [that] captures biometric data" (which Trimble's accused system indisputably does not) can infringe. *Id.* Through its express language, claim 1 unequivocally distinguishes between video and biometric data ***and*** requires different modules to capture each. Minotaur's Opposition (like the deficient claim chart attached to its FAC)[2] does not contest that the ***only*** thing it alleges is "biometric data" is actually video imagery data, precisely what the claim language forbids; Minotaur points to nothing else. Opp. at 1 (citing privacy notice that Minotaur alleges equates video and biometric data), 5, 7.

The specification also contradicts Minotaur's argument that "video data" can be "biometric data" in claim 1. As explained in more detail in Trimble's motion (Mot. at 5-6, 12), the '376 specification expressly distinguishes "video data" (which is from a "video capture module") from distinct and separate "biometric data" or biometrics (collected by "biometric sensors" of the "data capture module"). Figure 1, for example, shows a system with ***different*** control units for "video capture" and "data capture" (element 2), video recording and encoding (element 3), and ***separate*** occupant, vehicle and biometrics sensors (element 4). Dkt. 29-1 at Fig. 1. The specification also distinguishes "traditional vehicle sensors" and "video sensors" from "non-traditional data sensors," such as occupant sensors and "biometric sensors (such as a heart beat monitor)." *Id.* at 2:29-48; *see also id.* at 4:15-28 (describing figure 1 with a video camera (element 3) and "non-visual occupant and vehicle data sensors [element (4)], including biometric sensors"), 4:29-48 (describing biometric sensors "such as heartbeat monitor … of use in recognizing a state of stress or drowsiness in the driver" and a separate "video capture module"), 5:10-15 (the video capture module's control unit time-stamping video data so that it can be later synchronized with other "non-visual data" captured by the separate data capture module), 5:22-27, 5:31-56. The '376

---

[2] This chart also would not have passed muster under Local Patent Rule 4(b)(3) if it had been served as part of Minotaur's infringement contentions because it does not identify the specific location of where each limitation of the claim is found in Trimble's accused product.

4

specification describes the invention as capturing traditional video and vehicle data, but also capturing "non-traditional data" such as from separate occupant and data sensors.

Minotaur argues that it would be illogical and "nonsensical" (Opp. at 2, 5-6) for the claim language and specification to separate "biometric data" from "video data," but it is Minotaur's interpretation that is unsupported. It is not just that the claim language uses the two separate facially distinct terms, although it is the law (and supports Trimble's position) that different claim terms are **presumed** to have different meanings. *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings."); *Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 677 F.3d 1361, 1369 (Fed. Cir. 2012) ("The general presumption that different terms have different meanings remains."). Here, that the claims require separate and distinct types of data is particularly clear here because the claims recite that video and biometric data are captured by different structures (i.e., the video capture module and data capture module, respectively). The best Minotaur can muster in response is that the presumption that claim terms have different meanings does not apply if it would be nonsensical to interpret them consistently with the presumption. But "biometric data" and "video data" being separate is not nonsensical at all: to the contrary, it is dictated by the entire intrinsic record.

Minotaur cites only two lines (one sentence) of the patent's specification in its entire brief that allegedly support its current litigation-driven construction that biometric and video data can be the same. Opp. at 6 (citing Dkt. 29-1 at 4:62-64). But the cited two lines establish nothing of the sort. The single sentence involved actually discusses "occupant data," not "biometric data." Not only that, but it does not even establish that "occupant data" is captured by video. Instead, the specification there discloses that some occupant information can "infer[red]" based on visual information and "then fused with other occupant sensors, such as weight sensors and position sensors…" This has absolutely no bearing on whether video data is "biometric data." At most,

this clarifies that data extracted by processing "video data" can be fed into and fused with "occupant data" collected by "occupant sensors."

Even without consulting the prosecution history, the '376 claims and specification leave no room for the argument that "video data" is "biometric data." Minotaur's arguments about the claims and specification fail to transform its infringement claims into the realm of plausibility.

B.  **The Applicant Disclaimed Any Interpretation That "Biometric Data" Could Be The Same As "Video Data" For Claim 1**

To the extent the specification and claim language left any doubt (which they do not), the prosecution history—which is part of the intrinsic record and may be considered in determining the implausibility of Minotaur's infringement claim (*see* Mot. at 1-2, n.1)—is the nail in the coffin. Trimble describes the extensive and unequivocal prosecution history in its motion (*id*. at 6-8, 12-13), including the applicant's statements in its Appeal Brief (Ex. A, Dkt. 30-2), Office Action Response (Ex. B, Dkt. 30-3), Response after Final Office Action (Ex. C, Dkt. 30-4); Reply Brief on Appeal (Ex. D, Dkt. 30-5), as well as the Board's analysis in its Decision on Appeal (Ex. E, Dkt. 30-6). Consistently throughout this prosecution history, each of Minotaur's predecessor, the Patent Office Examiner, and the Board distinguished between "video data" (captured by a "video capture module") and allegedly non-traditional "biometric data" and "occupant data" (captured by sensors that are part of a separate and distinct data capture module). *E.g.*, Ex. A at 5, 8-9 (distinguishing Sakoh and Lemelson as not disclosing "occupant sensors that gather biometric data" as part of a data capture module); Ex. B at 6, 7-8; Ex. C at 2-4 (Sakoh in view of "Lemelson et al does not disclose occupant sensors that gather biometric data"); Ex. D at 2; Ex. E at 3, 7-9 (Board finding claims nonobvious over cited grounds based solely on the distinction between "video data" and "vehicle data" captured by Sakoh and/or Lemelson and recited "biometric data").

Minotaur misconstrues its predecessor's statements to argue that it was only distinguishing collecting "vehicle data" (not "video data") from "biometric data." *See* Opp. at 6-7. This is plainly wrong. It ignores that Minotaur's predecessor was distinguishing the claims over the combination

6

of Sakoh and Lemelson, which it argued together did not render obvious gathering "biometric data," even though it admitted and ***agreed*** that Sakoh captures "video data." *E.g.*, Ex. A at 5 ("Sakoh only captures vehicle data (acceleration) and video data…."), 6 (discussing "the video data in Sakoh") 8-9 (distinguishing combinations, including the combination of Sakoh and Lemelson as not capturing "biometric data"); Ex. B at 8 (asserting that the prior art, including Sakoh that disclosed capturing video, did not disclose or suggest claims reciting "a plurality of sensors that obtain biometric data, a video capture module that records video data inside and outside of the vehicle and a data recorder recording and continuously synchronizing the biometric data with the video data"); Ex. C at 3-4; Ex. E at 3-4, 7-9 (finding that Sakoh and Lemelson together disclose capturing video and driving/vehicle data, but not gathering biometric data). Minotaur ultimately fails to grapple with the fact that its predecessor (and the Board) expressly distinguished Sakoh (gathering video) and Lemelson (capturing vehicle data) from biometric data. Indeed, this was the sole reason the claims were allowed. This, too, supports dismissal.

C.  **Trimble's 2024 Privacy Policy Has No Bearing On The '376 Patent Claims' Meaning**

In perhaps its most blatant and inappropriate attempt to distort the issue presented to the Court, Minotaur insists that Trimble's 2024 privacy policy creates an issue of fact that would preclude dismissal here. Nothing could be further from reality.

Even accepting Minotaur's incorrect interpretation of that document (which the Court should not, *see* Mot. at 9), the goal of any claim construction exercise is to determine how the inventor defined the term (or how people of ordinary skill in the art at the time of the invention would have understood that term) in light of—most importantly—the specification, claims, and prosecution history. *E.g.*, *Phillips*, 415 F. 3d at 1314-1318, 1324. As mentioned above, resort to extrinsic evidence is disfavored, but—to the extent that doing so is necessary or helpful—the goal remains to determine how the term would have been understood by a person of ordinary skill in the art at the time of the invention (i.e., 2002 or 2003 here) in the context of the public disclosure

7

of the patent. *Id.* at 1313, 1318 ("[E]xtrinsic evidence by definition is not part of the patent and does not have the specification's virtue of being created at the time of patent prosecution for the purpose of explaining the patent's scope and meaning.").

Trimble's present-day privacy policy has absolutely no bearing on the proper inquiry that the Court is undertaking. It is language from a Trimble (not Minotaur) legal (not technical) document drafted in the 2020s (not 2002 or 2003). The Court can and should simply ignore it as it resolves this Rule 12(b)(6) motion.

### IV. MINOTAUR'S INDIRECT INFRINGEMENT CLAIMS SHOULD ALSO BE DISMISSED

Because Minotaur does not and cannot allege direct infringement by any third party under any plausible interpretation of the claims, its indirect infringement allegations also fail. *See Intell. Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1331 (Fed. Cir. 2017) ("[A] finding of direct infringement is predicate to any finding of indirect infringement"); *Enplas Display Device Corp. v. Seoul Semiconductor Co. Ltd.*, 909 F.3d 398, 407 (Fed. Cir. 2018). For instance, although Minotaur points in a formulaic and conclusory fashion generically to Trimble's "customers" as third parties whose infringement that Trimble allegedly induces, that allegation is based on those customers' use of **Trimble's** devices in unidentified end-point products (FAC ¶15), which do not and cannot directly infringe for the reasons explained above. For that reason alone, the Court could dismiss Minotaur's claims.

Minotaur's indirect infringement claims are further deficient for additional reasons, including: (1) because Minotaur does not allege pre-suit knowledge of the patent; and (2) because Minotaur's formulaic and conclusory allegations of intent to induce infringement (i.e., the mens rea component) are fatally deficient. Either or both of these reasons could also support dismissal.

Trimble has already acknowledged that there is a split of authority as to whether a plaintiff must allege pre-suit knowledge of the asserted patent to adequately allege inducement. For the reasons detailed in Trimble's motion (Mot. at 13-14), Trimble submits that the better authority

8

requires pre-suit knowledge for inducement. In addressing this issue, Minotaur notably does not address the effect of *Commil* on this District's precedent and relies only on out-of-district authorities.

In evaluating the question of pre-suit versus post-suit inducement ***in this specific case***, it also important to note that the asserted '376 patent expired on November 4, 2024, during briefing of this motion. *See* Dkt. No. 29-1 (filing date of January 27, 2003, plus 646 days of patent extension, equates to an expiration date of November 4, 2024); 35 U.S.C. § 154 (a) (term of patent is 20 years from filing); 35 U.S.C. § 154 (b) (providing for adjustment of patent term). No damages for infringement are available for any activities that take place after patent expiration. *See Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc.*, 655 F.3d 1291, 1299 (Fed. Cir. 2011) (past damages available until patent expiration, subject to six-year statute of limitations under 35 U.S.C. § 286). This means that, as a practical matter, permitting just post-suit inducement to survive is near meaningless, given the short window between when this suit was filed and November 4th.

Separately, Minotaur does not try to pretend that its inducement allegations are anything but threadbare, conclusory, and formulaic. They are, in short, insufficient to allege the specific intent to induce infringement. *E.g.*, *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (inducement requires "culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities"); *see also, e.g., Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) (defendant must have both "knowledge of the patent in suit and knowledge of patent infringement"). The only authority that Minotaur cites to defend the sufficiency of its weak allegations are unreported cases from out of this District, which applied to different facts. In any event, Minotaur's allegations are far below the bar which the Federal Circuit has found sufficient. *E.g.*, *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015) ("[S]imply recit[ing] the legal conclusion that Defendants acted with specific intent" does not amount to reciting sufficient facts

that "would allow a court to reasonably infer that Defendants had the specific intent to induce infringement."); *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 46 (Fed. Cir. 2024) ("[Plaintiff] plausibly alleges that [Defendant] had knowledge of its infringement based on a notice letter."); *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1375, 1379–80 (Fed. Cir. 2017) (knowledge requirement satisfied by pleading Defendant had hired employees with knowledge of patent and products that practice a patent and their knowledge could be imputed to employees that assisted or directed installation). Minotaur provides none of the type or level of detail found sufficient in these and other similar cases in its pleading.

### V. CONCLUSION: ANY DISMISSAL SHOULD BE WITH PREJUDICE

Minotaur's infringement allegations are deficient because "video data" is not "biometric data" within the meaning of the '376 patent. This is express and clear in the claims, specification, and prosecution history. There is no rule against dismissing claims that are not plausible and do not stand a chance of success; it is, in fact, the best practice to do so. Minotaur has not and cannot plausibly allege that Trimble's accused products capture the required "biometric data." Minotaur has already amended once, and it cannot fix the deficiencies in its claims because Trimble's products are, in relevant respects, just like the prior art references that Minotaur's predecessor supposedly innovated over.

Trimble has already been put to the expense of two motions to dismiss on Minotaur's implausible claims. Enough is enough. Any dismissal should be with prejudice and without leave to amend. *See, e.g.*, *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

Dated: November 6, 2024                    Respectfully submitted,

/s/ *Daniel Keese*
Amanda Tessar
Colorado Bar No. 33173
PERKINS COIE LLP
1900 16th Street, Suite 1400
Denver, CO 80202
(303) 291-2300
ATessar@perkinscoie.com

Daniel Keese
Oregon Bar No. 140989
PERKINS COIE LLP
1120 NW Couch Street, 10th Floor
Portland, OR 97209
(503) 727-2000
DKeese@perksincoie.com

# CERTIFICATE OF COMPLIANCE

Pursuant to D.C. COLO. L. P. R. 17, I hereby certify that this brief contains 3,597 words, exclusive of the cover page, table of contents, table of authorities, signature block, and this certification page. Defendant's opening brief contained 5,343 words, exclusive of the cover page, table of contents, table of authorities, signature block, for a combined total of 8,940 words.

*/s/ Daniel Keese*
Daniel Keese
